## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 21 2017, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald E.C. Leicht
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jesse Cantu, *Appellant-Defendant,* | June 21, 2017 |
| | Court of Appeals Case No. 34A05-1701-CR-94 |
| v. | Appeal from the Howard Circuit Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Lynn Murray, Judge |
| | Trial Court Cause No. 34C01-1510-F3-168 |

**Baker, Judge.**

[1] Jesse Cantu appeals the sentence imposed by the trial court after he pleaded guilty to Rape, a Level 3 felony.[1] Cantu argues that pursuant to Indiana Appellate Rule 7(B), the sentence imposed is inappropriate in light of the nature of the offense and his character. Finding that Mr. Cantu's sentence is not inappropriate, we affirm.

## Facts

[2] Sixteen-year-old Cantu visited sixteen-year-old E.S. at her home on the afternoon of October 13, 2015. Cantu and E.S. had been dating for two months. E.S. told Cantu that she wanted to end their relationship, and, after she closed the door to her room, they briefly cuddled as they sat on her bed. Shortly thereafter, Cantu pinned her arms to the bed, pulled down her pants and underwear, and penetrated her with his penis for between thirty seconds and one minute. She repeatedly said, "No, no, stop, get off me!" during the incident. Appellant's App. Vol. II p. 22. Cantu then left E.S.'s home, and E.S. told her mother what had happened. E.S.'s parents reported the incident to the police and took E.S. to the hospital.

[3] On October 16, 2016, the State charged Cantu with Level 3 felony rape and Level 6 felony sexual battery. Cantu posted bond and was released from

---

[1] Ind. Code § 35-42-4-1.

custody. Upon Cantu's release, the court put a no-contact order in place, preventing Cantu from having any contact with E.S. and her family.

[4] E.S.'s family reported several break-ins and trespasses on their property over the following weeks. In March 2016, E.S.'s parents positively identified Cantu to the police from security camera footage filmed outside their home, and Cantu was arrested. The court subsequently revoked Cantu's bond.

[5] Cantu agreed to plead guilty to rape in exchange for the dismissal of the sexual battery charge. On December 16, 2016, the trial court sentenced Cantu to fifteen years, with nine years suspended to probation. Cantu now appeals.

## Discussion and Decision

[6] Cantu argues that the sentence is inappropriate in light of the nature of the offense and his character pursuant to Indiana Appellate Rule 7(B). This Court must "conduct [its] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [its] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence[.]" *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[7] A person who commits a Level 3 felony may be imprisoned for a minimum of three years and a maximum of sixteen years, with the advisory sentence being nine years. Ind. Code § 35-50-2-5. Cantu's fifteen-year sentence with six years executed and nine suspended falls within the statutory requirement. His

executed sentence is below the advisory sentence for a Level 3 felony. We do not find that his sentence is an outlier as described in *Knapp*.

[8] The nature of the offense, while not as severe as some cases, is still serious. The crime has caused E.S. significant trauma with which she is still dealing. E.S. had never had sex before she was raped. Cantu admitted that he knew she did not want to have sex at the time, but he nonetheless forced himself on her. E.S. testified that before the rape, she enjoyed school and had an active social life. Now she is no longer able to concentrate on her classes and cannot maintain friendships. Her mood is unstable, she cannot sleep because of night terrors, and she has attempted to physically harm herself. Cantu preyed on this teenage girl, violating her trust and her body and causing lasting trauma to her and her family. The nature of the offense does not aid Cantu's inappropriateness argument.

[9] As for Cantu's character, while he had no prior criminal history, he committed multiple new offenses while on bond for this case. He repeatedly violated the no-contact order taken out against him by E.S.'s family. He attempted to break into her house on several occasions and sometimes succeeded, stealing items of personal property which were later recovered from his possession. E.S. and her parents set up burglar alarms, installed security cameras, and changed their locks to protect themselves against Cantu, but he persisted, frequently damaging their property and security system at great expense to them. Only when Cantu's bond was revoked and he was placed in custody did his behavior

stop. Cantu's actions evidence a desire to harass and abuse E.S. and her family and do not reflect well on his character.

[10] Furthermore, Cantu has repeatedly sent threats to E.S. On the night of the rape, E.S. sent an electronic message to Cantu stating that she wanted to tell her mother what had happened. Cantu attempted to intimidate her into remaining silent, writing: "I will kill myself. Tell her things got a bit carried away but please don't tell her I raped you." Appellant's Vol. II p. 24. When E.S. replied that she would not lie about the rape, Cantu wrote: "Then I'm going to kill myself." Appellant's App. Vol. IV p. 13–14. Cantu also sent messages to other individuals, asking them to batter E.S. Cantu's attempts to avoid culpability by threatening and manipulating E.S. do not indicate to us that his sentence should be reduced based on his character. His callous and menacing statements show a lack of remorse for the trauma he has caused.

[11] Cantu argues that the trial court should have considered the fact that he did not subject E.S. to beating, torture, confinement or multiple sexual assaults as a positive reflection of his character. We do not see how the fact that his crime was not worse is a positive reflection on Cantu's character. He also suggests that his age at the time of the crime and his ADHD diagnosis render the sentence appropriate. His age and any mental conditions he suffers from have not tempered the vindictiveness with which he has pursued E.S. and her family. The facts before us do not recommend a reduction in Cantu's sentence.

We therefore find that Cantu's sentence was not inappropriate in light of the nature of the offense and his character.

The judgment of the trial court is affirmed.

Barnes, J., and Crone, J., concur.